UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW HAMPSHIRE INSURANCE
COMPANY,

    Plaintiff,

v.

WILLIAM T. CARLETON II and
URSULA ST. CLAIR, personal
representative of the Estate of Layla Dietz,

    Defendants.
    _____/

Hon. John Corbett O'Meara

Case No. 10-11152

**OPINION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court are cross-motions for summary judgment, filed August 31, 2010. The court heard oral argument on December 9, 2010, and took the matter under advisement. For the reasons stated in this opinion and order, Plaintiff's motion is granted and Defendants' motion is denied.

**BACKGROUND FACTS**

Plaintiff New Hampshire Insurance Company filed this declaratory judgment action to determine whether it must provide coverage to Defendant William T. Carleton II under a boat insurance policy. In September 2007, Carleton attended a sailboat regatta sponsored by the Bayview Yacht Club on the Detroit River. After the races on September 22, 2007, Carleton's boat, the *Tiberon*, and another boat, the *Cujo,* were being towed back to Bayview by an inflatable dinghy owned by Tim Prophit, a *Cujo* crew member. Prophit tied the dinghy to the end of a dock, the *Tiberon* rafted up next to the dinghy, and the *Cujo* rafted up next to the

*Tiberon*. In order to access the *Tiberon* or *Cujo* from the dock, one would need to traverse over the dinghy. Carleton apparently thanked Prophit for the tow, but they did not have any further conversation; they did not know each other.

Prophit and Carleton testified regarding sailors' etiquette with respect to "rafting" boats together – that you have implied permission to traverse a boat you are rafted off to get to your own boat, but "you don't linger." Prophit Dep. at 30.

After the races, the yacht club held a party. One of the guests was Layla Dietz. Dietz and Carleton met at the party and shared some drinks. Dietz was highly intoxicated and was asked to leave the bar. After leaving the bar, Dietz and Carleton went to see Carleton's boat. However, the couple never made it to the *Tiberon*. They stepped into the dinghy and ended up having sexual relations there.

Dietz and Carleton were interrupted by Krista Paxton, a crew member of the *Cujo*, who was attempting to access that boat. After being discovered by Paxton, who excused herself and left, Dietz asked Carleton to leave. Dietz assured Carleton that she would be okay, so he left and went to a camper where he was staying. Dietz was reported missing the next day; her body was recovered from the harbor at Bayview two days later. Her death was consistent with drowning and her blood alcohol level was .29 at the time of her death, according to the Wayne County coroner's report.

In January 2008, the Estate of Layla Dietz filed a lawsuit in state court against Carleton, alleging claims of negligence and gross negligence arising out the death of Dietz. New Hampshire Insurance Company initially provided a defense for Carleton under a reservation of rights. Carleton testified in an examination under oath that the couple had never been on the

*Tiberon* and that he did not have permission of the dinghy's owner to be aboard it. Pl.'s Ex. D. at 53. Indeed, Carleton testified that he did not know who the owner of the dinghy was. Id.

Based upon this testimony, New Hampshire informed Carleton that his boat insurance policy did not provide coverage. The policy provides that New Hampshire will pay those amounts Carleton is "legally liable to pay for an occurrence which results from the ownership, maintenance, use, or operation of his sailboat" and will pay bodily injury and property damage arising out of his "permissive use of a private pleasure vessel" that Carleton does not own. Ex. H at section B1, B2. New Hampshire contends that because Carleton admitted that he did not have the owner's permission to use the dinghy, there is no coverage under the policy, which has a limit of $300,000.

Carleton was ultimately defended in the state court suit by USAA, his renter's insurance company. That policy had a limit of $100,000. The parties settled the underlying suit in 2009 for $400,000. USAA paid $100,000 and the Estate is permitted to pursue enforcement for the remaining $300,000 through assignment of Carleton's claim against New Hampshire.

## LAW AND ANALYSIS

### I. Choice of Law

Plaintiff contends that Virginia law applies to this action. A federal court in a diversity case applies the substantive law of the forum state, including that state's choice of law rules. Mill's Pride, Inc. v. Continental Ins. Co., 300 F.3d 701, 704 (6th Cir. 2002) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Under Michigan choice of law rules, the court is to consider the factors outlined in the Restatement (Second) of Conflict of Laws § 188 to determine which state's law governs a contract's interpretation. See Auto-Owners Ins. Co. v.

Redlands Ins. Co., 522 F. Supp.2d 891, 895 (W.D. Mich), aff'd 549 F.3d 1043 (6th Cir. 2007); Chrysler Corp. v. Skyline Indus. Serv. Inc., 448 Mich. 113, 124 (1995). These factors are the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile of the parties.

At the time the policy was issued and at the time of the Bayview regatta, Carleton resided in Virginia. The policy was issued to him in Virginia, and involved a boat that was located in Virginia. Although Defendants point out that the alleged tort occurred in Michigan, this factor is not relevant here, as it is the parties' rights under the contract that are being adjudicated, not Carleton's negligence. Accordingly, the state with the most contacts with respect to the insurance policy at issue is Virginia, and Virginia law applies.

## II.     Interpretation of the Policy

The policy covers Carleton's "permissive use" of a boat that he does not own. It is undisputed that Carleton did not have express permission from Prophit to use the dinghy for any purpose. Carleton did not even know who Prophit was. At most, Carleton had implied permission to traverse the dinghy to access his sailboat, consistent with sailors' custom. Certainly, as Carleton admitted, he did not have permission to engage in sexual relations in Prophit's boat or to use the boat for any other purpose. Contrary to Defendants' argument, the implied permission to traverse the dinghy does not also provide Carleton implied permission to use the dinghy in any way he wished. See Hartford Fire Ins. Co. v. Davis, 436 S.E.2d 429, 431-32 (Va. 1993) (mechanic's permissive use of vehicle to make repairs did not extend to personal use after hours). Because Carleton did not have permission to use the dinghy, the policy does not provide coverage in this situation.

# ORDER

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Defendants' motion for summary judgment is DENIED.

The court will enter judgment in favor of Plaintiff.

                                                s/John Corbett O'Meara
                                                United States District Judge

Date: December 15, 2010

I hereby certify that on December 15, 2010, a copy of the foregoing document was served upon counsel of record using the ECF system.

                                                  s/William Barkholz
                                                Case Manager