UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEW HAMPSHIRE INSURANCE
COMPANY,

       Plaintiff,

                                 Hon. John Corbett O'Meara

v.

                                 Case No. 10-11152

WILLIAM T. CARLETON II and
URSULA ST. CLAIR, personal
representative of the Estate of Layla Dietz,

       Defendants.

_____/

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Plaintiff's motion for summary judgment, which has been fully

briefed. The court heard oral argument on June 20, 2013, and took the matter under advisement.

For the reasons explained below, Plaintiff's motion is granted.

**BACKGROUND FACTS**

Plaintiff New Hampshire Insurance Company ("NHIC") filed this declaratory judgment

action to determine whether it must provide coverage to Defendant William T. Carleton II under

a marine insurance policy. Carleton and Layla Dietz met at a party at the Bayview Yacht Club

on the Detroit River. They left the party to see Carleton's sailboat, which was tied to a rigid

inflatable boat ("RIB"), which was tied to the Bayview dock. In order to get to Carleton's boat,

the *Tiburon*, Carleton and Dietz had to traverse the RIB. Carleton and Dietz ended up engaging

in sexual relations on the RIB. After they were interrupted by another person, Dietz asked

Carleton to leave. Carleton left Dietz, in a highly intoxicated state, on the RIB. Her body was

recovered from the harbor at Bayview two days later.

Carleton's marine insurance policy covers bodily injury and property damage arising out of his "permissive use of a private pleasure vessel" that he does not own.  NHIC denied coverage under the policy.  NHIC first moved for summary judgment based upon the argument that Carleton did not have permission to use the RIB to engage in sexual relations, but only to access the *Tiburon*.  This court granted Plaintiff's motion.  The Sixth Circuit reversed, explaining as follows:

> NHIC focuses almost solely on Carleton's testimony that he did not have permission to be on the RIB "doing what they were doing," as well as Prophit's testimony that people do not "linger" when crossing others' boats and that he was surprise Carleton and Dietz used the RIB as they did.  This argument is a red herring. The details of Carleton's and Dietz's sexual encounter add nothing to the determination whether Carleton had permission to have Dietz enter on and step off the RIB when she did.  As both Carleton and Prophit testified, and as NHIC does not seriously dispute, Carleton and Dietz had implicit permission to cross the RIB to get to the Tiburon.  Carleton testified that the reason they headed toward the docks was that Dietz wanted to see Carleton's boat.  In order to see the Tiburon, it was necessary to come aboard the RIB and, obviously, to get back off of it.  Although they did linger, there is no dispute that Carleton and Dietz had ceased having intercourse and that when Carleton left her, Dietz was sitting on the RIB.  A reasonable inference from these facts is that Dietz fell into the water as she was attempting to leave.  A rational trier of fact, therefore, could conclude that the reason they got onto the RIB was to gain access to the Tiburon and that Dietz drowned while she was getting off the RIB, a use for which Carleton also had implicit permission.

Sixth Circuit Opinion at 10.

The Sixth Circuit remanded, and NHIC has moved for summary judgment a second time. NHIC argues that the claim asserted by Dietz's estate against Carleton is only covered if it arose out of Carleton's permissive use of the RIB.  In other words, Dietz's estate must demonstrate

that she entered the water and drowned after stepping on or off of the RIB.  NHIC argues that

Dietz's estate is precluded from re-litigating this issue because it was already litigated in state

court.

## LAW AND ANALYSIS

NHIC seeks a declaratory judgment that the claim asserted by Layla Dietz's estate

against Carleton is not covered by Carleton's marine insurance policy.  The claim is covered

only if it arose out of Carleton's permissive use of the RIB.  Dietz's estate has the burden of

proving that the claim is covered.  See Heniser v. Frankenmuth Mut. Ins. Co., 449 Mich. 155,

172 (1995).

Collateral estoppel, or issue preclusion, is a question of law to be determined by the

court. Stemler v. City of Florence, 350 F.3d 578, 585 (6th Cir. 2003).  "When deciding whether to

afford preclusive effect to a state court judgment, the Full Faith and Credit Act, 28 U.S.C. §

1738, requires the federal court to give the prior adjudication the same preclusive effect it would

have under the law of the state whose court issued the judgment." Id. at 586.  Under Michigan

law, "[g]enerally, for collateral estoppel to apply three elements must be satisfied: (1) 'a question

of fact essential to the judgment must have been actually litigated and determined by a valid and

final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the

issue'; and (3) 'there must be mutuality of estoppel.'" Monat v. State Farm Ins. Co., 469 Mich.

679, 682-84 (2004).  However, "the lack of mutuality of estoppel should not preclude the use of

collateral estoppel when it is asserted defensively to prevent a party from relitigating an issue

that such party has already had a full and fair opportunity to litigate in a prior suit." Id. at 691-

92.  Here, Dietz's estate has the burden of proving that its claim is covered and NHIC is

asserting collateral estoppel as a defense; accordingly, mutuality is not required.

NHIC contends that the issue of how Dietz entered the water was determined in the negligence action brought by Dietz's estate against the Bayview Yacht Club. Dietz's estate claimed that Bayview had been negligent in its maintenance of the marina area and that Bayview had breached its duty to Dietz by failing to maintain or install adequate lighting, ladders, buoys, and railings on and near the docks. Bayview filed a motion for summary judgment, which was granted by the circuit court and affirmed by the Michigan Court of Appeals. The Court of Appeals found that Dietz's estate had failed to establish causation in fact:

> Plaintiff's theory of causation in the present case – i.e., that Bayview failed to maintain its premises in a safe condition and that this caused Dietz to fall into the water from the rigid inflatable boat or the dock – 'is, at best, just as possible as another theory.' Indeed there was no evidence concerning the manner or means by which Dietz actually entered the water. No admissible evidence tended to establish that Dietz fell into the water from the rigid inflatable boat, while she was attempting to get out of the rigid inflatable boat, from the dock, or from any other part of Bayview's property. The admissible documentary evidence in this case was 'without selective application' to any of the possible explanations, and plaintiff's theory of causation therefore remained conjecture only. As explained earlier, speculation and conjecture are insufficient to create a question of fact concerning causation. Without any proof of the manner by which Dietz entered the water in the first instance, plaintiff could not tie Bayview's actions to Dietz's ultimate drowning. On the basis of the evidence presented, no rational trier of fact could have concluded that, but for Bayview's allegedly negligent acts or omissions, Dietz would not have drowned.

St. Clair v. Bayview Yacht Club, 2011 WL 1519360 at *3 (Mich. App. Apr. 21, 2011) (citations omitted).

NHIC argues that the Michigan Court of Appeals found that there was no proof as to how Dietz entered the water and that Dietz's estate is precluded from relitigating that issue here.

-4-

Dietz's estate disputes that the issue of how Dietz entered the water was a question of fact "essential" to the state court judgment.[1]  According to Dietz's estate, the "only issue decided was the causation issue based on Bayview's failure to install additional lighting, ladders, buoys, and railings, and it was not necessary for the court to determine the place from which Dietz fell into the water to support its judgment." Resp. at 7.  Contrary to this argument, however, the manner in which Dietz entered the water (and lack of evidence on the issue) was central to the Court of Appeals's determination that the estate could not establish causation.  Without evidence regarding how Dietz entered the water, the estate could not prove that any condition of Bayview's property caused her injury.  The state court judgment in favor of Bayview was based entirely on the estate's failure to present evidence of causation in fact.

Dietz's estate also argues that "the Sixth Circuit in this case has already found that a reasonable trier of fact could conclude that Dietz drowned while she was getting off the RIB." Resp. at 10.  However, as NHIC points out, the Sixth Circuit did not have the issue of collateral estoppel or the Michigan Court of Appeals decision before it.  Accordingly, the court will grant summary judgment in favor of NHIC.

<u>**ORDER**</u>

IT IS HEREBY ORDERED that NHIC's motion for summary judgment is GRANTED.


s/John Corbett O'Meara
United States District Judge

Date:  June 24, 2013

---

[1] In its brief, the estate does not dispute that the other elements of collateral estoppel are met.

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, June 24, 2013, using the ECF system and/or ordinary mail.


s/William Barkholz
Case Manager